Suggest otherwise, we'll go to the next case, which is Cone Mill Bankruptcy. This is the last case that's really interesting. Oh, there's no question about it. Yeah, this is deadly. This is deadly. Deadly.     Deadly. Deadly. Deadly. Deadly. Deadly. Deadly. Deadly. Oh, dear. Mr. Cattle, let's see, Cattle and Mellow. I can't, where's the accent? It's a tough one. Cattle and Mellow. Okay. We're going to keep counsel to your time because we've got a lot of cases on the dining room surfaces. That's a blessing. Good morning, Your Honors. Gerard Cattle and Mellow from the law firm of Wolf Block on behalf of the appellants, Crompton Colors, Inc. and Crompton Corporation, now known as Kemptora Corporation. And if it's okay with Your Honors, I'd just refer, as I do on my brief, to Kemptora rather than the predecessor name. I would respectfully request three minutes of rebuttal time. Granted. Your Honors, we're here today with respect to an appeal by the appellants of an order of the United States District Court, District of Delaware, which was entered on January 31st, 2008. In sum, that order affirmed the decision of the United States Bankruptcy Court for the District of Delaware, in which the court found that there was appropriate notice to Kemptora of the sale of substantially all of the assets of Cone Mills, now known as ITG. Now, there's no question. Is there that a bankruptcy court can order a sale free and clear? Yes, Your Honor. That's correct. Under 363, there are requirements that need to be met by a debtor seeking that type of relief, which is extraordinary. But, yes, assuming that one of the five conditions – Well, a debtor, it's not that extraordinary because I see cases that did it. Well, but there still are requirements. And this court approved – yeah, sure. But this court approved it in TWA. That's correct. In fact, TWA is, I think, a – glad it wasn't me. TWA, I think, is an instructive case, Your Honor. I was just trying to shut you up. My wife does it all the time. TWA is a very instructive case, Your Honor, because there, for example, and I cite that case in our brief. I know you do. Right, in that particular case. But that case decides against you. Well, no, it doesn't. What that case says, Your Honor, is that a successor liability claim, which was the very claim that we had and we believe we still have as against the buyer of the assets, that that claim is a claim that could be encompassed in a free and clear sale. And, in fact, in that TWA decision – And that's what happened here. Right. And, Your Honor, but because – And so I don't know why that helps you. It seems to me that holds exactly to the contrary. It holds that the bankruptcy court has the right to do that. Now, you're saying they didn't have the right to do that in this case because they didn't get the special notice. Well, I'm saying a little bit more than that, respectfully, Your Honor. What I'm saying is, first, because the TWA decision does include a successor liability claim as one that could be sold free and clear, that specifically required the debtor in this instance to treat me under Bankruptcy Rule 6004C, which is that they had to serve me, Your Honor, with a copy of the underlying sale motion. It is undisputed in this record that Kemptora was never served with the sale. Isn't 6004C limited to creditors who have liens and you didn't – you had an unsecured claim? I mean, it seems to me that TWA had a higher priority because they actually had the – whatever, warrants or whatever it is to get a seat. But in this case, all you have is an unsecured claim. You have a – you don't even have a judgment. But that's the point, Your Honor. On the TWA, this court said that 363F includes not only liens, but it also includes other interests. And the other interest in TWA – Interest in the property to be sold. Right. Wasn't the property here sold 23 years ago? The property which gives rise to our claim for environmental liability was sold 23 years ago, Your Honor. But just like Your Honor's decision, this court's decision in TWA, where this court said that a claim arising from a voucher program and EEOC claims for sexual discrimination under Title VII – which was TWA. Correct, Your Honor. I mean, we're talking about a facility. Right, but Your Honor – That was sold many years earlier. But that facility, Your Honor – and this is critical – that facility was used for 50 years by this company, Cone Mills, in connection with developing their business and developing their assets. And it's our position – it's our position that those were the assets. Of course not the facility. I don't dispute the facility wasn't sold in the sale. But the business itself was built on, among other things, the development and the manufacturing which took place over 50 years of this facility. Just like in TWA, where this court said that the airlines – that TWA was built on by the employees who were the very beneficiaries of the travel voucher program, Your Honor. What happens if you were right and proper notice was not given? Do we have to void the asset sale in its entirety, or do we just have to say that you have a successor liability claim? I certainly wouldn't ask this court to void the sale in its entirety. The sale was done, and I don't think we can unscramble that egg. But I do think, in the case the law plays out, that you could, Your Honor, you could find that the sale order at this juncture does not preclude my client from pursuing a successor liability claim. I think where we would go is back to the bankruptcy court. Wouldn't you then be just one other general unsecured creditor? And wouldn't that then violate the priority rules of the bankruptcy? And how much money is left anyway for these unsecured claims? Your Honor, but again, just like in this court's TWA decision, there was a trial, there was an underlying trial in the bankruptcy court that took place as to whether or not the successor liability claim that was asserted there flowing from the voucher program could be, that that successor liability could be eliminated by the sale. I never got that trial, Your Honor. We never had the opportunity to make that attempt. So you're even lower in this scheme in a way because you, I mean, you didn't even have a, you don't have anything. You don't have a judgment. You just have a claim. And like all the other creditors, you have to stand in line. Well, Your Honor, ultimately if the court do you think you have a right to stand ahead of other creditors with unsecured claims? Your Honor, what I had a right to do, with all respect, I had a right to be in front of the bankruptcy court at the time the sale was being processed before that court. And I had a right to raise the same objection that the claimants in TWA had. And ultimately, it could be. So you're back to notice. That's right. I go back to notice, Your Honor. I would have had the opportunity. Ultimately, I can't speculate. Correct, Your Honor. There was one notice out of the many notices. And was the cure amount notice before the bankruptcy court made its final decision to approve the sale free and clear? Yes, Your Honor, it was. So you had enough notice to complain to the bankruptcy court? That's where I respectfully disagree. I think the question is, was it enough? I disagree. But you had notice. Let me put it that way. Sorry. Go ahead. We've been sipping on your frustrations. If we assume for purposes of discussion that the cure notice conveyed some information to you that was pertinent to the claim you're now making, I say if we assume that at the moment, is there any reason why either the bankruptcy court or this court should relieve you of the obligation to have some workable system for getting a communication to the right part of your client rather than having it wind up in the, quote, dead file of the credit office? Your Honor, I think Your Honor's question is a little loaded with all the respect because I think what it does is it shifts the burden. It shifts the burden of notice on my client. When the burden was on the debtor, the burden was on the debtor was asking for the relief sought, which is to sell property free and clear of other claims and interests. And on the TWA, that interest included successful liability claim, according to the debtor. Under Rule 6004, that required them, 6004C, to serve me as if it was a contested matter, which means they serve the motion, I get the motion to the attention of an agent or a general partner or legal department. That never took place. That's undisputed. What did happen, and Your Honor's correct, there was a notice that was sent to the general mailbox of Kemptora. It's a large publicly traded company, over 5,000 employees, and it wound up in the debt file. And supposedly that office is on the same floor as the legal department or some other credit department? Well, I think that's correct, Your Honor. They're physically close, but that doesn't necessarily mean that they interact on a constant level. There was a notice that came in that was checked because it referred to a contract. There was no executory contract between the parties. That's not disputed either. It's conceded by my opponent. So there was a notice that came in to nobody in particular attention, and it came in and it talks about, Your Honor, if you look at the notice, it talks about the sale of contracts free and clear. It doesn't talk about claims or interest. It's specifically limited to contracts. There was no contract between the parties, and so is the record. Why should your client with its unliquidated claim be treated any differently than all of the other creditors of Cone Mills? Well, Your Honor, first of all, we weren't treated any differently. We were treated worse. We never got the chance to make our objection. Your Honor's question suggests that even if we made the argument. Well, but not every creditor is entitled to a 6004C note, right? That's right. That's exactly right, but we were. Okay, you say your client is entitled to a 6004C. That's right, because you say you have an interest in the property to be sold. Therefore, there's a heightened notice requirement. And what is your interest in the property to be sold? My interest in the property to be sold, just like in TWA, was that I had, in the first instance, an environmental claim. But more importantly, I had a claim. TWA didn't deal with notice. I'm sorry, Your Honor. TWA didn't deal with the issue. No, but it deals with the interest in property under 363F. Yeah, but that's a different. To be sold. Yeah, that's a different issue than the issue before us. Well, Your Honor, it's different. I mean, they're not claiming that they didn't get the right notice. Nothing in the opinion, which I reread this weekend, says anything about the kind of notice that you get. No, but it talks about when you do have an interest in property. Let me attack this differently, Judge Slaugher. If I was not a 363F interest, then what did the order, in fact, accomplish? We wouldn't be here before, Your Honor, if my opponent conceded that I did not have an interest in the property sold and, therefore, was not subject to the order. I'm here because the position that my opponent has taken, and I understand this position, is that I'm bound by a 360F finding. There's no question that you're bound by that finding. Well, it's on, hopefully, this decision to reverse that. Yeah, but that's what the statute says. Correct, Your Honor, but my point is we were treated differently. We were treated differently by Cone Mills. We were treated differently because they specifically listed environmental claims and successful liability claims in the schedules to the asset purchase agreement. Other general creditors were not listed. We were. Unfortunately, we never got the asset purchase agreement because that was attached to the sale motion. We never got the sale motion. And what would you have done? That's the question. What would you have done? What would you have done that would put your claim ahead of anybody else's? Hopefully, I would have been hired by the client at that point in time to run into the bankruptcy court, but I would have went to the bankruptcy court. If you had objected to the sale, saying your successor liability had to claim, had to survive the sale, wouldn't you have lost under TWA? Well, it's a difficult question to answer because I never made the argument, but to answer your question bluntly, it was a very difficult argument to prosecute. I don't disagree, but the burden is on Cone Mills to satisfy 363 F5. It's my burden to tell you that your red light is on. Thank you. We'll get to, I guess, your rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. Michael Lastowski of Duane Morris LLP on behalf of the Afflee International Textile Group, which is the successor to the party which appeared in the bankruptcy. I'll just refer to them as ITG, if I may, and just as I'll refer to the appellate as Kemptura. I think the court put its finger on one of the major issues in this case, and that is this, that it's undisputed that Kemptura is a general unsecured creditor in this case, and then the issue becomes what type of notice did they, as a general unsecured creditor, have to be given of this 363 sale. Then the issue becomes whether they could be served under 2002, just like any other general unsecured creditor where the standard is fairly light. You can send a notice to an address, for example, and notice only has to be given that a sale is going to take place. On the other hand, if Kemptura were to be found to be, and then if you have a lien or interest in the property to be sold, then there's a heightened degree of notice. You would agree that you didn't meet that requirement. You could not meet that requirement. We did not. No. Because once you get to 6004C, then you get to Rule 7004, which governs service of summons a complaint in an adversarial proceeding, where the service requirements are higher than they would be in this case, candidly. And what is your position with respect to what notice should have been forthcoming? Well, at the risk of sounding, the notice that we provided, and that is notice of, in fact, that a sale was going to take place and giving them notice of the sale by delivering it to the address on our books and records. And that's, in fact, what happened. I love that your papers call it the sale notice. Your friend across the aisle calls it the so-called sale notice. In fact, it's called the supplemental notice of possible assumption sale and assignment of certain unexpired leases and executory contracts and sale hearing. Beyond that, I can't even read it, but my eyes are concededly bad. That's the notice. Correct. Which we would say certainly gives notice of the sale. My law clerk who worked on this described calling it a sale notice as being underhanded and misleading. But, you know, there's a little bit of exaggeration there. Although I would say in the arena where I practice every day. You have to really look. It's buried in here. It is buried in here. You would agree with that. I'd say it's on the first page in the third paragraph. I would say in the arena where I practice, we would characterize it as a sale notice. In the first page on the fourth paragraph, it says, and it's hard to read here, in connection with the proposed asset sale, the debtors intend to assume, sell, and assign certain unexpired leases, agreements, and executory contracts free and clear. It doesn't even say assets free and clear. It says, but that's the fourth paragraph here. It's really, I know you've got in here the date of the sale, and I know it's in here the date objections must be filed. But if you were going to finance a car with this kind of a document, it would be thrown out in two minutes, wouldn't it? Well, no. I don't know the answer to that. What I will say is this. If you looked at a bar date notice, it might be equally confusing, and they are routinely sent to lay people at their places of address, and they're charged with understanding it. I would just say the first paragraph says, please take notice, and on October 10, 2003, their debtors filed their motion approving sales procedures, approving breakup fees, and scheduling a hearing to consider the sale of substantially all of the debtors' assets. It's a notice of the sale hearing, not a closing on a sale. And then the second paragraph says you can obtain a copy of the asset purchase agreement. Let me be sure I understand. If this notice hadn't gone forward, you would agree that Mr. Cannavale's client was entitled to something. If there had been no notice at all sent. Well, I think the argument would go if there were no notice whatsoever, then they would be able to argue perhaps successfully that they are not bound by the sell order and not bound by the free and clear language of the order, and I think it's an injunction of the order, preventing persons from pursuing successful liability claims against the purchaser. Well, if you say that, and if we were to conclude that Barry's reading of this piece of paper didn't convey very much, then what would happen? He would not prevail on this appeal, and the matter would go back to Judge Sleet. Is that correct? And he, in turn, would return it to the bankruptcy. Correct. But I would note that the contents of the notice, again, in 2002, which is a much lighter standard than it is in 6004C, just requires that the notice include the time and place of any public sale, the terms of any private sale, and the time fixed for following objections, and the notice of a proposed sale is sufficient if it generally describes a property, and here it did give notice of the sale of substantially all the assets. And I would notice that in another context, Kemptura has argued that they're a big, you know, behemoth corporation for purposes of explaining why they didn't get the actual piece of paper. But I would say in that context, certainly for a sophisticated creditor such as they, this certainly gave them sufficient enough notice that, in fact, a sale was taking place. Why weren't they on the service list from the start? Why did they not get the piece of paper? I can't answer that because we didn't represent the debtor. We represent the purchaser, and it happens in these cases. The debtor files the case, compiles the information, the sale takes place, and then the debtor vanishes. The case, they just liquidate. The record seems to show that Cone Mill's counsel and sort of bankruptcy manager were unaware of any reason why a notice wasn't sent. I think when he was at a deposition and was confronted and asked Cone Mill's counsel, well, I think it may have been my client, but Mr. Kuntz was actually the purchaser's counsel. Yes. And so when asked why they weren't served, he, as the purchaser, couldn't provide an explanation because the purchaser is not in charge of giving the notice. The debtor is. I think he said he wouldn't be in a position to know. Yes, because, again, the debtor is the one that compiles this information and then sends out the notices under the code. The purchaser doesn't do that. Now, what is your argument as to why Demtora did not have an interest in the property being sold? Well, let me just say factually, and I'll answer it two ways. Factually and based upon the scheme of the code, factually, as was noted in the beginning, the real property, which allegedly gives rise to their claims, was sold by the debtors 20 years before the sale. The dye business, which allegedly engendered the pollution to giving rise to their claims, similarly was dye vested a couple of decades before the sale. So they had no interest within the rule of 6004C in the property being sold. This wasn't a stock transaction. We bought certain hard assets. We didn't buy that property. We did not buy that dye business. Now, one might argue, well, this has been argued, that because they had some type of interest as someone hoping to pursue a successful liability claim. And, by the way, any general unsecured creditor could attempt to do that. They could say, well, you bought the assets. We want to see you. But, you know, we would argue that under 6004C, it's not that type of interest that gives rise to a specific notice under 7004. And why would I make that distinction? If you have a lien. Is it 7004 or 6004? Well, I'm sorry, 6004C incorporates 9014. All right. Yeah. I mean, why should someone holding a lien get special notice? Well, because if you're a lien holder under 363, there are certain things you can do if a sale is announced. You can credit bid if you have an allowed secured claim. You can credit bid. In other words, you could say, I want to buy the property. I have an allowed secured claim of $1 million. I'm going to bid $1 million. You can object to the sale if the sale price doesn't exceed the value of all liens in the property. That's under 363F3. Or you could seek adequate protection of your interest. Let's say there's one property being sold and there's a mortgagee who has a mortgage on it. It's a $100,000 property, a $90,000 mortgage. When the sale occurs, that security interest doesn't disappear. The mortgagee gets a security interest in the sales proceeds. And if you look at the order in this case, it provides, as they all do, that the liens attach to proceeds. That's why somebody with a lien in the property is required to be given more specific notice than other creditors. And that's recognized in 6004C, which, again, very specifically says, this notice shall be given to persons who have liens or other interests in their property being sold, which, again, was not the case here. They are, again, just a general unsecured creditor raising a successful liability claim, just as any other general unsecured creditor could. Did you say that the debtor is under no obligation to give notice to appropriate ranges of credit? No, I may have misspoken. The debtor is the entity charged with giving notice in these cases. The purchaser has to. It doesn't have any. The purchaser comes in, you know, and makes an offer, and they get certain approvals for procedures. I was inquiring. Mr. Kuntz was general counsel for the debtor. For the purchaser. And he was both. Oh, I'm sorry. Forgive me. He was both. Forgive me, and, Your Honor, it's been five years. And then he became general counsel of the purchaser. On the sale, he became general counsel. Forgive me. Upon the sale, he did, and that's how I've known him for the past four years. But you're correct. He was general counsel of the debtor and could not, in that context, couldn't understand why a notice had not been given in the way the question was posed to him. And the correspondence seems to show that he was quite aware of the claims, the potential claims, at least, of what is now Chemtura. Chemtura. Not the case? That may very well be the case, Justice. He may have been aware of the existence of, you know, thousands of trade creditors as well. And the point being, having been aware, what did that then require him to do? If it's under 2002, we would say they notice of the sale. He was writing letters to Paul Weiss saying, what do we do about all this? Correct. Yes. But that doesn't put the debtor under any obligation to? Under Rule 2002, it doesn't. If you look at Rule 2002G2, which talks about addressing notices, it's just the notices to be sent to the addressed debtor. It doesn't have the requirements that you would find in an adversary proceeding. Again, 6004C, 9014, 7004, where it would have to be addressed to a specific person. In other words, the rules are very strict. You couldn't just say President. You'd have to have a specific name. And I would just note, you know, it may seem that the standard is too light. I mean, it is what the rules provide. And, in fact, if it were a bar date notice, all that would be required is a notice sent to the address. It wouldn't have to be any more specific than that. So if a bar date notice had gone out and it wasn't a specific name on that notice and it went to Kentora, they would be bound by that. If it was a notice, if you look at 2002, the deadline for filing objections to a plan of reorganization, same result. A notice of the first meeting of creditors, same result. And I would notice that this lesser standard of notice is most evident in 2002I, which provides that this type of notice, notice of a sale to a general and secured creditor, the court could have authorized notice to the creditors' committee exclusively, in lieu of notice to the creditors. And you might ask yourself, why would that be the case? That's because in the context of the interest that an unsecured creditor has, their interest is that there's a fair process and that a fair value is achieved at a sale. And that's something that the creditors' committee is charged with doing at the estate's expense. But notice was publicized in the Times and in some trade journals as well. Correct. There was publication notice as well. There was publication notice. So that having been done, the sale was approved, those interests were protected. And, again, there's no specific interest in the property that required protection. So what is the relevance of the interest in the property discussed in TWA, that phrase? Well, because there happened an argument that the sale free and clear could only be free and clear of interest. And in that case, the court recognized that a 363 order could sell free and clear of interest beyond interest. In that case, they included these claims that you were describing earlier in the argument, which might give rise to an argument that, therefore, those are interests in the property being sold, and that likewise is the case here. But I would say the distinction is, for one thing, in TWA, that issue wasn't raised. But if one were to look at that case — Well, the negligence wasn't raised, but the question is whether there were interests in the property. And what I'm asking you is, what is the relevance? When does it matter if you have a claim that — if you have something that's an interest in the property? Well, I would say one thing factually can be distinguished, because the property, which really gave rise to the claim, hadn't been sold, and the business line hadn't been sold. But, again, I would say in terms of getting this specific notice under 6004C-9014-7004, I would urge the court to find that that would apply in cases where there's some type of remedy reserved in 363 for somebody with such an interest. And, again, if you're a secured creditor with a lien in the property or you have some type of interim interest, there are at least three parts — three subparts of 363, which give you special rights to, for example, credit bid, demand that the sale value exceed all liens, and to seek adequate protection, i.e., that your liens will attach to the proceeds of the sale. Thank you very much. Thank you. We'll hear a rebuttal from Mr. Lanello. It's nicer than my kids. I'll shorten it. I'll be very brief. Judge Sloboda, I thought your last line of questioning was very instructive because it went to the line of what was my interest in this property being sold. And although we're debating it back and forth today, that debate should have taken place in the bankruptcy court. I should have had the opportunity to go into the bankruptcy court and convince the bankruptcy judge that I did have an interest in that property, and that interest could not be terminated by 363. But your only interest in the property was — your only interest in the whole thing is you have a claim that has never been liquidated, and I can't imagine any bankruptcy court would have given you any special treatment aside from all the other unsecured credits. Well, first of all — All the other people who have claims. I guess there were other firms that had claims. Kemptor has incurred about $3.5 million to date cleaning up the facility, so there is a real damage that we're talking here. I'm not sure all you're telling us is that your claim is meritorious, but that doesn't get to the issue that's before us. Nobody has ever decided that it is or isn't. You're saying your remediation claim runs with the Cone Mills estate, and that's the interest you had in the property. That's correct. And that's why you should have been notified. That's correct, Your Honor. And, in fact, Cone Mills treated me differently than a general unsecured creditor because they — But it's your say-so. I mean, that's all we have is your say-so. Well, but we have more — There is no lien. There's no claim. There's no formal anything. But, well, there was a claim that ultimately was resolved in the bankruptcy court, but that's not the subject of the appeal. But we have more than that. We have more than that because what we have is a sale order and an asset purchase agreement and a motion that were all put forth by Cone Mills. And those documents specifically deal with Kemptora, unlike the general creditor. They were worried, Your Honor, about a successful liability claim because of this court's decision in TWA. They rightfully said, we're going to include that in the sale, and we're going to wipe it out. That's fine. But give me notice. Give me an opportunity to go before the court and to make an argument. Say what? Well, I would argue, just like the claimants, and perhaps even better than the claimants in TWA, that that claim could not be cut off — They didn't get any — — by the sale. They didn't get anywhere, the claimants in TWA. But, Your Honor, they had an opportunity to argue. Yeah, but they didn't. They had an opportunity to present the case. We never had that opportunity. Yeah. So we're prejudging if I would have been successful. No, but they didn't get anywhere. Well, first — When you say you didn't have the opportunity, that's only assuming that the supplemental notice here was not noticed. That's correct, Your Honor. And I think my brief — and I know my time is running — I think my May brief plays that out. And this court, in another TWA decision, has said that formal notice can't be trumped by some actual notice, and that's in TWA dealing with a confirmation hearing. I needed the right type of notice to make the argument and have my day in court. We never had it, Your Honor. Thank you. Okay. Thank you.